IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CALVIN C. CHIN, | ) | CIV. NO. 12-00508 JMS-KSC |
| | ) | |
| Plaintiff, | ) | ORDER AFFIRMING DECISION OF |
| | ) | ADMINISTRATIVE LAW JUDGE |
| vs. | ) | |
| | ) | |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

## I. INTRODUCTION

This is an action brought under 42 U.S.C. § 405(g) to review a final

decision of the Acting Commissioner of Social Security, Carolyn C. Colvin (the

"Commissioner," or "Defendant"). Calvin C. Chin ("Chin" or "Plaintiff") was

awarded Social Security disability benefits, effective from March 2005, based on a

work injury. The Commissioner claims that Plaintiff's disability benefits must

now be offset by a payment that Plaintiff received from an April 2006 settlement

agreement with his former employer. Plaintiff disagrees.

Social Security disability benefits are generally reduced by workers'

compensation benefits but not by private or union disability insurance payments.

Applying that principle, the substantive issue before this court is relatively simple -- did the payment Plaintiff received under the April 2006 settlement constitute a workers' compensation payment or a disability insurance payment?

After carefully reviewing the record, the court concludes that the April 2006 settlement constitutes a lump sum of workers' compensation payments. Accordingly, the court AFFIRMS the September 22, 2010 Final Decision of the Administrative Law Judge ("ALJ"), and upholds the Commissioner's claim that Chin received an overpayment.

## II. **BACKGROUND**

Although the substantive issue is relatively straightforward, the posture of the case also presents several procedural issues. The court thus sets forth the important substantive facts, as well as relevant aspects of the procedural history in considerable detail.

Plaintiff, formerly a painter with M. Shiroma Painting Company, was injured in an industrial accident on June 18, 2003. Administrative Record ("AR") at 21, 28. After that, he worked sporadically, on a part-time basis, until about September 30, 2004. *Id.* at 22. Although the record is not entirely clear, Plaintiff apparently received workers' compensation and/or temporary disability benefits from June 2003 until December 2004 or January 2005. *Id.* at 11, 21, 28-29. He

then applied for Social Security disability benefits in December 2005. The

subsequent history of Plaintiff's Social Security claim is lengthy, and the relevant

portions are best understood in a timeline, as detailed below:

December 16, 2005     Plaintiff applies for Social Security disability insurance benefits. *Id.* at 11.

April 7, 2006[1]     Plaintiff executes a "Compromise and Settlement Agreement" with King & Neel (a "workers' compensation Insurance Adjuster") on behalf of "M. Shiroma Painting Company, d.b.a. M. Shiroma Construction Company," and "Workers' Compensation Self Insurance Group, PSIG" (collectively "Employer/Adjuster"). *Id.* at 28.

According to the April 2006 settlement, it is based on "a claim for workers' compensation benefits against Employer/Adjuster . . . alleging that on or about June 18, 2003, and while in the course and scope of his employment . . . [Plaintiff] alleged an injury to his right leg, right shoulder, and right eye[.]" *Id.* A dispute apparently arose as to whether Plaintiff's "back condition was . . . related to the industrial accident of June 18, 2003." *Id.* at 29. Under the terms of the April 2006 settlement, "Employer/Adjuster" agreed to pay Plaintiff a total of $68,331.12. The amount is itemized into categories for disability payments, attorneys' fees, a living allowance, medical-related reimbursements, and other costs. *Id.* at 30.

---

[1] The "Compromise and Settlement Agreement" was filed with the Hawaii Department of Labor and Industrial Relations Appeals Board ("DLIR") on April 24, 2006. AR at 27. The court refers to this Settlement Agreement as "the April 2006 settlement."

| | |
|---|---|
| March 10, 2008 | The Commissioner awards Plaintiff monthly Social Security disability benefits effective from March 2005, finding that Plaintiff became disabled on September 29, 2004. *Id.* at 40. The award states "[h]owever, we cannot pay you for March 2005 through November 2005." *Id.* The Commissioner awards Plaintiff (1) a lump sum of $39,417 for past due benefits, and (2) monthly benefits of $1,718.20 (before deductions), beginning in March 2008. *Id.* at 40-41. |
| | Among other information, the award states: "We have to take into account your workers' compensation payment of $2,513.30 when we figure your Social Security benefits. Because you receive this payment, we are withholding the benefits you are due." *Id.* at 41. It then explains "[w]e do not reduce benefits once workers' compensation payments have stopped. Therefore we are paying benefits at the full rate beginning December 2005. Please let us know right away if you receive workers' compensation and/or other public disability payments again." *Id.* |
| July 27, 2009 | The Commissioner asks Plaintiff under 42 U.S.C. § 404(a) to reimburse benefits she already paid to Plaintiff. She sends Plaintiff a letter stating "[w]e have determined that you received $39,050 more in Social Security benefits that you were due." AR at 64.[2] In part, the Commissioner states "[y]ou |

---

[2] Although the exact date is unclear from the record, Plaintiff had previous notice of this overpayment. The record contains a March 3, 2009 letter giving Plaintiff "the new repayment withholding schedule we will use to collect the overpayment," AR at 50, and a corresponding March 10, 2009 "request for reconsideration" from Plaintiff. *Id.* at 52. A March 17, 2009 letter from the Commissioner (referencing a $39,050 balance) indicates that Plaintiff would continue to receive benefits until the Commissioner responded to that request. *Id.* at 53. And, on June 12,

(continued...)

have received a lump-sum award of $68,331.12 to settle your workers' compensation claim.  A lump-sum award affects Social Security benefits in the same way that periodic payments do."  *Id.*  The letter continues:  "When we figured how much to reduce you and your family's benefits, we excluded $5,143.32 of the legal, medical and other expenses.  We treated the rest of the lump-sum, $63,187.80, as if you had been paid $580.00 per week."  *Id.*

The letter then provides:  "You should refund this overpayment within 30 days. . . .  If we do not receive your refund within 30 days, we plan to recover the overpayment by withholding your full benefit beginning . . . about October 21, 2009.  We will continue withholding your benefit until the overpayment has been fully recovered."  *Id.* at 65.

It also explains Plaintiff's appeal rights, indicating that he (1) could apply for a waiver of overpayment if "[i]t was not your fault that you got too much Social Security money," and "[p]aying us back would mean you cannot pay your bills for . . . necessary expenses, or it would be unfair for some other reason;" and/or (2) could file an appeal within sixty days, and that if he appealed within thirty days, "you will not have to pay us back until we decide your case."  *Id.*

|  |  |
|---|---|
| August 13, 2009 | The Commissioner issues a detailed Notice of Reconsideration to Plaintiff, "affirm[ing] the accuracy of the calculation of your overpayment of |

---

[2](...continued)
2009, attorney Dennis Chang, wrote to the Commissioner indicating he represented Plaintiff regarding Plaintiff's "overpayment issue."  *Id.* at 179.

$39,050.00." *Id.* at 73.

| | |
|---|---|
| August 14, 2009 | Plaintiff requests a hearing before an ALJ. *Id.* at 76. |
| April 22, 2010 | The ALJ sets a hearing for June 15, 2010. *Id.* at 108. |
| April 23, 2010 | Counsel Dennis Chang enters an appearance for Plaintiff for the June 2010 hearing. *Id.* at 107. In Chang's written filing, Plaintiff both (1) requests a waiver, arguing that Plaintiff "is clearly without fault and, if he is ordered to pay reimbursement, there will be undue financial hardship," and (2) argues, providing a detailed itemization, that "the calculation of overpayment is wrong." *Id.* at 110. He does *not* argue that the April 2006 settlement agreement was actually "disability insurance" and not "workers' compensation." |
| June 15, 2010 | An administrative hearing is held before ALJ Dean K. Franks. *Id.* at 269-289. The ALJ determines that the request for waiver "hasn't [yet] been heard before by the district office." *Id.* at 273. The ALJ thus indicates that "an issue of waiver [is] not in front of me." *Id.* at 288. The ALJ tells Plaintiff that "you still have the subsequent issue which would be of requesting a waiver . . . once this is settled then there will be a new notice sent to you[.]" *Id.* at 286. |

The hearing focuses on the calculation of the amount of overpayment. Plaintiff argues, through counsel, that additional amounts should have been excluded from the $68,331.12 settlement in computing the relevant portion of "workers' compensation" such that the overpayment should

be lower. *Id.* at 281-82. The ALJ summarized (and counsel agreed): "And so Mr. Chang it appears then that the issue you're [bringing] today is not that the original award was wrong. . . . Your issue is that the amount of the overpayment charged against him is incorrect . . . because there were some payments that were paid out of this lump sum benefit of $68,331 which under the regulations should have been excluded and not counted as income to the claimant." *Id.* at 281. That is, Plaintiff does *not* argue that the April 2006 settlement agreement was actually payment for "disability insurance" and not "workers' compensation."

The ALJ tentatively rules "that the $68,000 is not the correct amount to be considered as the lump sum." *Id.* at 284. He indicates that "if I agree with you . . . we direct the program center to recalculate the overpayment." *Id.* He anticipates that "it will be a partially favorable decision where the lump sum that was used will be reduced [but] [t]here still will be an overpayment, because it still has to be applied[.]" *Id.* at 284-85. The parties agree, however, that Plaintiff would provide additional documentation after the hearing. *Id.* at 288.

July 21, 2010      Plaintiff's counsel provides additional documentation and argument, contending that "[t]he correct overpayment calculations should first be reduced by $18,938," based on the proper deductions. *Id.* at 114. He argues that, given this figure, Plaintiff "received a lump sum of $49,392.80 rather than the $68,331.12, which represents the total settlement inclusive of the deductible amounts." *Id.*

|  | He also makes additional arguments for waiver, indicating that Plaintiff "is not responsible for the alleged overpayment" and "is not at fault as well since all relevant information was provided to his local SSA office[.]" *Id.* at 115. |
| --- | --- |
| September 22, 2010 | Consistent with his June 15, 2010 inclinations, the ALJ issues a "Notice of Decision -- Partially Favorable." *Id.* at 191. The ALJ concludes that "the lump-sum award of $68,331.12 should have been reduced by $18,998.32 [and] [t]he claim is therefore remanded to the Western Program Service Center for recalculation of the overpayment." *Id.* at 196.[3] The ALJ vacates the overpayment amount of $39,050, and remands to the Western Program Service Center with instructions to "recalculate the overpayment using the excluded amount of $18,998.32." *Id.* at 197. (He makes no ruling regarding a waiver by the Commissioner of the overpayment.) |
| October 9, 2010 | The Commissioner (through the Western Program Service Center) issues a letter recalculating the amount of overpayment, as instructed by the ALJ. The new amount of overpayment is $28,840. *Id.* at 198. |
| October 15, 2010 | Plaintiff files a Request for Review of Hearing Decision. *Id.* at 153, 210. Among several other arguments, his counsel argues to the Social Security Appeals Council for the first time that "[t]he so-called workers' compensation lump sum |

---

[3] The ALJ's calculation of $18,998.32 differs from the $18,938 asserted by Plaintiff in his July 21, 2010 supplemental filing, apparently because of a typographical error in bills from medical providers -- Plaintiff alleged $933.32, AR at 114, when the actual figure was $993.32. *See id.* at 30, 116.

payment may be exempt since it is a part and parcel of a company and union group disability insurance, according to Mr. Chin in a document he had sent with copies to [the ALJ] and myself." *Id.* at 154 (referring to a copy of a Social Security guideline, POMS § DI 52105.015, discussed below).

Plaintiff also completes a Request for Waiver of Overpayment form (dated October 15, 2010), selecting as the reason that "The overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons." *Id.* at 202. (There is no indication in the record that any action was taken on this Request for Waiver.)

| | |
|---|---|
| July 11, 2012 | The Appeals Council denies Plaintiff's request for review. *Id.* at 218. This denial renders the ALJ's September 2010 Decision final and appealable to a district court. *See* 42 U.S.C. § 405(g); *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) ("When the Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence[.]") (citation and internal quotation marks omitted). |
| September 10, 2012 | Plaintiff, proceeding *pro se*, files this action in this court, petitioning for judicial review of the September 2010 ALJ Decision. Doc. No. 1. |
| February 8, 2013 | The court remands the case to the Commissioner to prepare a complete certified record because "missing files [were] needed to complete the administrative record." Doc. No. 20. The case is |

administratively closed.

| | |
|---|---|
| July 26, 2013 | The Appeals Council vacates the September 2010 Decision and remands to an ALJ for a de novo hearing "because the claim file . . . and the recording of the hearing" cannot be located. AR at 226. |
| October 24, 2013 | After the missing documents are located, the Appeals Council vacates its July 26, 2013 remand order, and allows Plaintiff to submit "additional evidence and/or arguments" to the Appeals Council regarding the September 2010 Decision. *Id.* at 7. |
| July 25, 2014 | The Appeals Council again denies review of the September 2010 Decision, considering "the reasons you disagree with the [September 2010 Decision], new evidence, and all of the issues in the case." *Id.* at 4A.<br><br>The Appeals Council rejects Plaintiff's argument that the "workers' compensation payments were part of a company and union group disability insurance program." *Id.* It reasons that "there is no evidence in the record showing that you received disability insurance payments through your employer or union." *Id.* Rather, "[t]he compromise agreement dated April 7, 2006 identified both the periodic payments and the lump-sum settlement you received as workers' compensation payments." *Id.* |
| October 7, 2014 | Case is re-opened in the district court. Doc. Nos. 37, 38. |
| January 12, 2015 | Plaintiff files his Opening Brief and Exhibits. |

Doc. No. 45.

March 9, 2015          The Commissioner files her Answering Brief.
                       Doc. No. 48.  (Plaintiff did not file a Reply Brief.)[4]

## III.  <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), "[t]he district court reviews the

Commissioner's final decision for substantial evidence, and the Commissioner's

decision will be disturbed only if it is not supported by substantial evidence or is

based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012); *see*

*also Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014)

("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the

testimony, and resolve ambiguities in the record.") (citations omitted).  Substantial

evidence is "more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Hill*, 698 F.3d at 1159 (citation omitted).

"Even though findings might be supported by substantial evidence,

the correct legal standard must be applied in making a determination of disability."

*Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) (citation omitted).  In other

words, "the decision should be set aside if the proper legal standards were not

---

[4]  The court decides this petition under Local Rule 7.2(d), based on written submissions without an oral hearing.

11

applied in weighing the evidence and making the decision." *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

"When the Appeals Council declines review, 'the ALJ's decision becomes the final decision of the Commissioner,'" and the district court reviews that decision for substantial evidence, based on the record as a whole.'" *Brewes*, 682 F.3d at 1161-62 (quoting *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011)) (other citation omitted). That is, the court reviews the ALJ's decision, not the Appeals Council's decision. *See id.* at 1161 ("[W]e do not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action.") (citing *Taylor*, 659 F.3d at 1231).

## IV. <u>DISCUSSION</u>

### A.    Plaintiff's Argument

Social Security disability benefits are generally reduced by taking workers' compensation benefits into account. *See* 42 U.S.C. § 424a(a)(2)(A) (providing a formula for a reduction of disability benefits if a claimant is entitled to "periodic benefits on account of [a claimant's] total or partial disability (whether or not permanent) under a [workers'] compensation law or plan of the

United States or a State[.]").  Moreover, it does not matter if payments of workers'

compensation benefits are awarded in a "lump sum" -- a similar reduction for a

lump-sum payment "shall be made at such time or times and in such amounts as

the Commissioner of Social Security finds will approximate as nearly as

practicable the reduction[.]"  42 U.S.C. § 424a(b).  *See, e.g.*, *Hodge v. Shalala*, 27

F.3d 430, 432 (9th Cir. 1994) ("[T]he scope of the federal offset provisions is

extremely broad.  Even lump-sum awards are 'periodic benefits' as long as they

are 'a commutation of, or a substitute for, periodic payments.'") (quoting

§ 424a(b)).  And the result is the same if the lump sum is a settlement of a

workers' compensation claim.  *See Black v. Schweiker*, 670 F.2d 108, 110 (9th Cir.

1982) (affirming an offset of Social Security disability benefits, given a settlement

of a workers' compensation claim, reasoning that "[w]here the right to and liability

for periodic workers' compensation payments are thus extinguished by a voluntary

settlement, the settlement can only be regarded as a 'substitute' for the

payments.").

Plaintiff's *pro se* Opening Brief, construed liberally, argues that his

disability benefits were improperly reduced because the April 2006 settlement

constituted "company or union group disability insurance," and not "workers'

compensation" benefits.  *See* Doc. No. 45, Pl.'s Brief at 1.  Specifically, Plaintiff

argues that:

> [a]n appeal was filed, on company or [union group
> disability payments].[5]  Appeals counsel [sic] stood by
> the ruling King and Neel as the insurance payer which is
> not true. . . . It Is [sic] a lot clear [sic] to see and read that
> Payments from union group is exempt from off-set
> calculation (POMS) Program Operations Manual System
> DI 52105.015 (dated 11/26/2008-Present).
>
> . . . . My WC records show corresponding letters from
> King and Neel that [they] are third party Adjuster for
> PSIG (Painting and Decorating Contractors of Hawaii
> Self Insured Group).  Payments paid came from the self
> insured group.
>
> . . . . M. Shiroma Painting is a Union Contrator
> Company.  And a member of (PSIG) Painting and
> Decorating Contractors Association of Hawaii Self
> Insurance Group.

*Id.* at 1-2.

His argument is derived from the Commissioner's "Program

Operations Manual System" ("POMS"), which, "formerly called the 'Claims

Manual,' is 'the Social Security Administration's authorized means for issuing

written program instructions for adjudicating claims and performing its mission.'"

*Jones v. Shalala*, 5 F.3d 447, 449 n.4 (9th Cir. 1993) (quoting *Briggs v. Sullivan*,

---

[5] The square brackets around "union group disability payments" are in the original.

886 F.2d 1132, 1135 (9th Cir. 1989)).[6]  And POMS § DI 52105.015, entitled

"Payments Not Considered Workers' Compensation (WC)," provides:

> The following payments are not WC.  The field office
> (FO) or processing center (PC) will input a special
> message to the master beneficiary record (MBR) to alert
> technicians that the payments are not WC.
> . . . .
> 5.      Company or union group disability insurance --
>          short or long term.
>
> 6.      Private disability insurance payments regardless of
>          the purchaser.

Doc. No. 45-6, Pl.'s Ex. 6 (copy of POMS § DI 52105.015) (also available at

http://policy.ssa.gov/poms.nsf/lnx/0452105015 (last accessed March 23, 2015)).

## B.      The Argument Has Not Been Waived

Initially, the Commissioner contends that Plaintiff's argument

regarding the *nature* of the April 2006 settlement (*i.e.*, that it represented

"company or union group disability insurance," and not workers' compensation

---

[6]  The POMS "contains the Social Security Administration's internal rules of procedure . . . [and] is a set of guidelines through which the Social Security Administration construes the statutes governing its operations."  C. Kuitschek & J. Dubin, *Social Security Disability Law and Procedure in Federal Court* § 1:19 at 36 (2015).  Accordingly, *Kennedy v. Colvin*, 738 F.3d 1172, 1177-78 (9th Cir. 2013), reiterates that the POMS is an agency interpretation that "may be 'entitled to respect' under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), to the extent it provides a persuasive interpretation of an ambiguous regulation, but it 'does not impose judicially enforceable duties on either this court or the ALJ.'" (quoting *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011)).  That is, the POMS "are entitled to respect, but only to the extent that those interpretations have the 'power to persuade.'"  *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)) (some internal quotation marks omitted).

benefits) was waived because Plaintiff only challenged the *amount* of the overpayment (not the nature of the settlement) before the ALJ. *See* Doc. No. 48 at 12, Def.'s Mem. at 11 ("Plaintiff has not preserved his contention against the Commissioner's finding about the fact of an overpayment because Plaintiff's representative did not raise this contention in his June 2010 letter to the ALJ or at the hearing."). The Commissioner relies on *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999), which held that "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel* further stated that "[w]e will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice[.]" *Id.*

But here -- although Plaintiff did indeed fail to argue to the ALJ that the April 2006 settlement was "company or union group disability insurance" -- Plaintiff *did* raise the issue with the Appeals Council. AR at 154. The Appeals Council invited new arguments and considered additional evidence, and rejected the very same argument that Plaintiff makes to this court. *Id.* at 4A. *Meanel* is thus distinguishable. Unlike here, "*Meanel* concerned an argument based on entirely new evidence brought to the court's attention for the first time in the district court appeal." *Skelton v. Comm'r of Soc. Sec.*, 2014 WL 4162536, at *12

(D. Or. Aug. 18, 2014) (finding *Meanel* distinguishable, and alternatively,

exercising discretion to reach the merits of the claimant's argument). And other

courts have likewise interpreted *Meanel* as part of "the Ninth Circuit's long-

standing position that claimants are required to raise all issues either before the

ALJ *or before the Appeals Council*." *Harhaw v. Colvin*, 2014 WL 972269, at *5

(E.D. Cal. Mar. 10, 2014) (emphasis added) (citing *Meanel*) (other citation

omitted). In short, because the issue was raised at the administrative level, the

issue was not waived.[7]

## C.    The ALJ's September 2010 Decision Correctly Applied Legal Standards and Is Supported by Substantial Evidence

On the merits, the Commissioner agrees that if a claimant receives

"company or union group disability insurance" as set forth in POMS § DI

52101.015(5), then such payments are not "workers' compensation" (and would

not offset Social Security disability benefits). As explained above, the substantive

---

[7] Although this court is reviewing the final decision of the ALJ (not the action of the Appeals Council), *Brewes*, 682 F.3d at 1161, the court must still consider new evidence submitted to the Appeals Council that was not before the ALJ. *See id.* at 1162 ("[T]he administrative record includes evidence submitted to and considered by the Appeals Council. The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision."). *Harhaw* thus reasoned that "because the record on appeal included issues and evidence submitted to and considered by the Commissioner, issues not raised before the ALJ but raised before the Appeals Council are preserved on appeal to the district court." 2014 WL 972269, at *4. *See Brewes*, 682 F.3d at 1162 ("[A]s a practical matter, the final decision of the Commissioner includes the Appeals Council's denial of review[.]").

issue before the court is simple -- was the April 2006 settlement payment under a group disability plan or workers' compensation?  The court concludes that the April 2006 settlement in fact constitutes a lump sum of workers' compensation payments.

The April 2006 settlement specifically explains the nature of the dispute and of the payment made to Plaintiff by "Employer/Adjuster" (defined as (1) "workers' compensation insurance Adjuster, KING & NEEL;" (2) "Employer, M. SHIROMA PAINTING COMPANY, INC."; and (3) "Workers' Compensation Self Insurance Group, PSIG."  AR at 28).  In pertinent part, the April 2006 settlement provides:

> WHEREAS, Claimant has alleged a claim for workers' compensation benefits against Employer/Adjuster pursuant to the provisions of Chapter 386, Hawaii Revised Statutes ("HRS"), as amended alleging that on or about June 18, 2003, and while in the course and scope of his employment with Employer, Claimant alleged an injury to his right leg, right shoulder, and right eye; and
> . . . .
> WHEREAS, by report dated August 16, 2004 . . . Dr. Clifford Lau opined that Claimant's conditions related to the industrial accident of June 18, 2003 were stable and rated Claimant at 12% impairment of the right lower extremity and 2% of the right upper extremity; and
>
> WHEREAS, by report dated January 13, 2005 . . . Dr. Lau opined that Claimant's alleged back condition was

not related to the industrial accident of June 18, 2003; and

WHEREAS, a Decision was issued by the Director [of] the Department of Labor and Industrial Relations ("Director" or "DLIR") on December 30, 2004, whereby the Director determined that Claimant was entitled to vocation rehabilitation ("VR") services and [to] continued TTD [(Temporary Total Disability)] benefits; and

WHEREAS, an appeal from the above-referenced Director's Decision was timely filed on January 10, 2005 by Employer/Adjuster and on January 12, 2005 by Claimant[.]

*Id.* at 28-29.

Given that dispute, the parties agreed that Plaintiff would be paid $68,331.12, and that both parties would "voluntarily withdraw their respective appeals" then pending before the State DLIR. *Id.* at 30. Among other matters, the parties agreed that "Claimant's alleged low back condition did not arise out of or in the course of his industrial accident of June 18, 2003 or his employment with Employer," and "Claimant agrees to waive any and all claims to which he alleged he has or may have that the termination of TTD benefits . . . was improper[.]" *Id.* at 31.

Based on its plain terms, the April 2006 settlement clearly and undisputably paid Plaintiff a lump sum to settle a "workers' compensation"

dispute.  The dispute concerned whether Plaintiff's back injury was related to his

industrial accident -- it concerned a claim for workers' compensation benefits

pursuant to Hawaii law.  The source of the payment was Plaintiff's former

employer (M. Shiroma Painting Company); the "Workers' Compensation Self

Insurance Group, PSIG" ("PSIG"); and King & Neel (defined in the April 2006

Settlement Agreement as a "workers' compensation insurance adjuster").  AR at

28.  And according to the POMS, these three entities are proper sources for

"workers' compensation" payments.  *See* POMS § DI 52101.001(B)(2) (defining

"workers' compensation" as "a temporary or permanent payment made under a

Federal or State law to [a] worker because of a work related injury, illness or

disease") & POMS § DI 52101.001(B)(2)(a) (defining "sources of [workers'

compensation] payments" as including "Insurance Carrier" and a "Self-insured

employer").[8]  Elsewhere, the POMS likewise explains that proper "payers of

[workers' compensation] in the States" include an "insurance carrier (licensed by

the State to transact [workers' compensation]," a "self-insured employer," and a

"third-party administrator (service organizations hired by self-insured employer)."

---

[8] *See* Doc. No. 48-1, Def.'s Ex. 1 (copy of POMS § DI 52101.001) (also available at
http://policy.ssa.gov/poms.nsf/ lnx/0452101001 (last accessed March 24, 2015)).

POMS § DI 52120.001(B).[9]

The Commissioner also points out that the POMS specifically instructs that amounts received under a settlement agreement for periodic workers' compensation payments are subject to offset. *See* POMS § DI 52120.001(I)(56).[10] Further, the POMS defines a "lump sum payment" as including "a commutation or a settlement." POMS § DI 52120.001(I)(21).[11] The court accepts these POMS sections as valid agency interpretations that are "'entitled to respect' under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." *Kennedy*, 738 F.3d at 1177.

---

[9]  *See* Doc. No. 48-2, Def.'s Ex. 2 (copy of POMS § DI 52120.001) (also available at http://policy.ssa.gov/poms.nsf/lnx/0452120001 (last accessed March 24, 2015). A fourth source of workers' compensation under POMS § 52120.001(B) is a "State agency," *id.*, which is not at issue here.

[10]  Section DI 52120.001(I)(56) defines "Voluntary Settlement Agreements," in pertinent part, as follows:

> Sometimes referred to as 'sidebar agreements,' are negotiated directly between the employee (or his/her attorney) and the employer (or the employer's insurance carrier). The employee's right to and liability for periodic WC payments is terminated by the agreement in return for a payment from the employer/insurer. Amounts received under these agreements are subject to offset in the same manner as an approved WC settlement regardless of whether or not the agreement requires approval of the State WC board, or whether or not State law construes the settlement amount to be payment of weekly WC.

Doc. No. 48-2, Def.'s Ex. 2 at 13 (copy of POMS § DI 52120.001) (also available at http://policy.ssa.gov/poms.nsf/lnx/0452120001 (last accessed March 24, 2015).

[11]  *See* Doc. No. 48-2, Def.'s Ex. 2 (copy of POMS § DI 52120.001) (also available at http://policy.ssa.gov/poms.nsf/lnx/0452120001 (last accessed March 24, 2015).

Indeed, such interpretations are consistent with Ninth Circuit precedent directly on point. *See Black*, 670 F.2d at 110 (affirming an offset of Social Security disability benefits where claimant had obtained a settlement of a workers' compensation claim).

Plaintiff might be confused by the roles of PSIG and King & Neel. He argues that "[the] Appeals [Council] stood by the ruling King and Neel as the insurance payer which is not true." Doc. No. 45, Pl.'s Mem. at 1. Apparently referring to PSIG, he states that "[it's clear] to see and read that Payments from union group is exempt from off-set calculation[.]" *Id.* But the record plainly establishes (and Plaintiff has no evidence to the contrary) that King & Neel is the "administrator for PSIG" (and "a workers' compensation insurance adjuster"), and PSIG is "a workers' compensation self insurance group" of which M. Shiroma Painting Company was a member. Doc. No. 45-4, Pl.'s Ex. 4. Under the POMS, they are all valid sources of workers' compensation payments.

In other words, Plaintiff has no evidence that any of the payment from the April 2006 Settlement Agreement constitutes "company or union group disability insurance" such that it could be excluded from an offset of Plaintiff's Social Security benefits. Accordingly, the ALJ's September 2010 Decision correctly applied applicable legal standards and was supported by substantial

evidence.  *See Hill*, 698 F.3d at 1158-59.  The court thus upholds the

Commissioner's ultimate determination that Plaintiff owes the Commissioner

$28,840 as an overpayment.[12]

### D.     The Court Cannot Consider Plaintiff's Request for a Waiver of Overpayment

The Social Security Act allows a recipient of benefits who has been

overpaid to request a waiver from repayment (1) if they are "without fault" and

(2) if repayment "would defeat the purpose of [Title II of the Social Security Act]

or would be against equity and good conscience."  42 U.S.C. § 404(b).  In turn, the

applicable regulation defines "defeat the purpose of title II" as meaning "to

deprive a person of income required for ordinary and necessary living expenses."

20 C.F.R. § 404.508(a).

The Commissioner argues that -- to the extent Plaintiff is still seeking

a review of a request for a waiver of overpayment -- this court should not consider

the issue for lack of administrative exhaustion.  (Plaintiff's Complaint alleges that

---

[12] Plaintiff's Opening Brief does not challenge the ALJ's computation of the overpayment -- which favorably (for the Plaintiff) reduced the amount due from $39,050 to $28,840 -- and any challenge to the amount (although mentioned in the Complaint) is waived. *See, e.g.*, *Avenetti v. Barnhart*, 456 F.3d 1122, 1125 (9th Cir. 2006) (reiterating, in a Social Security context, that arguments not raised by a party in its opening brief are waived) (citing *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999)).

"the Defendant did not consider Section 404.510A,[13] concerning fault on the part of the Defendant," Doc. No. 1, Compl. at 1, although Plaintiff did not raise or argue this issue in his Opening Brief.)  The court agrees.

Plaintiff requested a waiver prior to the June 2010 hearing before the ALJ, AR at 115, but the ALJ did not review the request because it had not been processed before the hearing.  *Id.* at 273.  The ALJ told the parties that "an issue of waiver [is] not in front of me," *id*. at 288, and told Plaintiff he could file a request after receiving a new notice of overpayment after those proceedings were concluded.  *Id.* at 286.  Likewise, although Plaintiff raised § 404(b) to the Appeals Council, *id.* at 155, the Appeals Council did not address the request for waiver. Thus, because there is no "final decision" of the Commissioner regarding that request for waiver as required by 42 U.S.C. § 405(g), the court cannot consider any challenges regarding the request.  *See, e.g.*, *Califano v. Sanders*, 430 U.S. 99, 108-09 (1977) (observing that § 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing'"); *Subia v. Comm'r of Soc. Sec.*, 264 F.3d 899, 902 (9th Cir. 2001) (concluding that the court "cannot seek judicial review" under § 405(g) if she did

---

[13]  20 C.F.R. § 404.510a concerns when an individual is "without fault" in receiving an overpayment for purposes of 42 U.S.C. § 404(b).

not exhaust administrative remedies, where there was no basis to waive the failure).

To be clear, as to a request for waiver under 42 U.S.C. § 404(b), the court has only determined that there is no such request properly before the court -- there is no "final determination" by the Commissioner in the record regarding a waiver. The court offers no opinion (and has made no determination) as to whether Plaintiff might otherwise qualify for a waiver, or whether he could still apply for a waiver upon conclusion of the present proceeding (if there is no request for waiver currently pending before the Commissioner).

///

///

///

///

///

///

///

///

///

///

25

# V.  **CONCLUSION**

For the foregoing reasons, the court AFFIRMS the September 22, 2010 Decision of the Administrative Law Judge, and thus upholds the Commissioner's $28,840 claim for overpayment from Plaintiff.  The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 2, 2015.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Chin v. Colvin*, Civ. No. 12-00508 JMS-KSC, Order Affirming Decision of Administrative Law Judge